IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MASCARENAS ENTERPRISES, INC.,

        Plaintiff,

  vs.                                                      CIVIL NO.  11-430 LFG/WDS

CITY OF ALBUQUERQUE,

        Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff Mascarenas Enterprises, Inc.'s ("Mascarenas") motion for partial summary judgment on liability [Doc. 16], and Defendant City of Albuquerque's ("City") cross-motion for summary judgment, seeking dismissal of Mascarenas's claims on grounds of *res judicata* or claim preclusion. [Doc. 21].  Both motions are fully briefed.  There is no need for an evidentiary hearing.  After careful consideration of the pleadings, attachments, and pertinent law, the Court determines that Mascarenas's present lawsuit is barred by claim preclusion.  The Court's reasoning follows.

### **Factual Background**[1]

From about 1998 through 2008, the City authorized Mascarenas to sell voluntary insurance to the City's employees.  There is no evidence that the City was displeased with Mascarenas's services during that ten-year period.

Around 2008, the City decided to undertake a competitive bid process to determine who could sell voluntary insurance to City employees.  The City sought to make available to its

---

[1] Unless otherwise noted, the factual background is taken from the parties' pleadings and is undisputed. [*See, e.g.,* Doc. 16, Plaintiff's Undisputed Material Facts, and Doc. 17, p. 2.]

employees additional options for voluntary benefits, including home, auto, life, and disability insurance policies. In 2009, the City solicited insurance proposals via an Invitation to Propose for Voluntary Benefits for the City of Albuquerque and Participating Entities ("ITP"). Mascarenas submitted its bid but was not selected as a vendor.

The reasons that the City did not select Mascarenas as a vendor under the ITP process are in dispute. Stated briefly, Mascarenas believed its submission under the ITP was fully responsive to the ITP criteria. [Doc. 23, Material Fact No. 20.] The City alleged that Mascarenas's proposal "failed to meet the minimum requirements regarding enrollment meetings, payment of administrative fees, and submitting quotes matching the specifications presented in the cost response form." [Doc. 17, Ex. 6, ¶ 5.] Although provided as background information, the Court does not find that the disputed reasons for Mascarenas's non-selection are material as to the issue of claim preclusion.

Those vendors that were selected under the City's criteria were allowed access to City employees to offer their insurance products. During the City's open enrollment meetings the selected vendors presented and promoted their insurance products. Because Mascarenas was not selected as a vendor in 2009, it claims the ITP process resulted in no access to City employees and in "substantial economic losses" to the business. [Doc. 17, Ex. 3, ¶ 4.]

For City employees who enrolled in these voluntary programs, premiums could be paid by payroll deduction. Moreover, any employee who wanted to continue with current insurance programs outside the ITP process, *e.g.,* Mascarenas's insurance products, were entitled to do so, but they could not utilize payment of premiums to the vendor through payroll deduction. The intent of the ITP was to competitively select the voluntary benefit programs that would be offered to City employees. [Doc. 23, Response, Ex. G, March 9, 2010 e-mail from Moser to Mascarenas.]

In addition to the stated intention, the ITP process also generated additional income for the City. Mascarenas alleged that "under the ITP, the City proposes to withhold and take 2.5% of the gross premiums paid by City employees as an administrative fee. . . ." [Doc. 17, Ex. 3, ¶ 7.] The City does not contest this allegation because it states that the Mascarenas "refused to agree to a 2.5% gross premium to be taken from the total deductions for each program . . . . ." [Doc. 17, Ex. 6, ¶ 7.]

Mascarenas contended that the City's ITP process was highly irregular and unfair. [Doc. 17, Ex. 2, ¶ 4.]

## **Procedural History**[2]

When Mascarenas was not selected as an authorized vendor, it submitted a protest to Pat Miller, the Director of Human Resources, on May 21, 2009. Miller notified Mascarenas that a review of the ITP process would be conducted and all individuals who submitted proposals would be notified. However, no formal notification or decision was made on the protest, and when no resolution was made by December 2009, Mascarenas wrote to the new Director of Human Resources, Eugene Moser. On April 5, 2010, Mascarenas filed an administrative appeal against the City in the Second Judicial District Court, State of New Mexico (CV 2010-04141), a case assigned to the Honorable Nan Nash ("first lawsuit"). [Doc. 17, Ex. 1.]

The basis of Mascarenas's first lawsuit against the City concerned "the City's selection of vendors under . . . [the] ITP [process] issued in May, 2009" and its non-selection as a vendor. [Doc. 17, Ex. 1; Doc. 21, Undisputed Fact No. 2.] In the first lawsuit, Mascarenas filed an Amended Petition for Writ of Certiorari on April 8, 2010, and a Second Amended Petition for Writ of Certiorari Pursuant to NMRA 1-075 and Complaint for Declaratory Judgment on April 19, 2010.

---

[2]The facts are taken from the parties' pleadings and undisputed facts unless otherwise noted.

[Doc. 21, Exhibits 2 and 3.]  The petitions sought review of the City's ITP decisions and selection of vendors and alleged that the new vendor policy allowed the City to contract directly with Travelers Insurance Company, rather than through Mascarenas, who was an insurance broker.  Thus, the petitions alleged that the City's ITP process was an attempt to circumvent Mascarenas's agency relationship with Travelers and essentially cut it out of the deal.  Because the City maintained its Purchasing Ordinance did not govern the ITP process, Mascarenas claimed it was unable to determine what rules, if any, applied to the ITP process.  Mascarenas requested a judicial determination on the administrative record that the City's ITP process was arbitrary, capricious, and an abuse of discretion and not supported by substantial evidence. [Id.]

In addition, the Second Petition for Writ [Doc. 21, Ex. 3, pp. 3-4] presented a complaint for declaratory judgment, requesting that the Court find the ITP process and the City's selection decisions were "not in accordance with law."  Mascarenas asserted, in part, as it had earlier that the City misused Mascarenas's ITP proposal as a basis to contact and negotiate directly with its principal (Travelers).  Mascarenas alleged that there were actual controversies between it and the City as to the fairness of the ITP process, the legality of the City's administrative fee structure under the ITP, whether the ITP was governed by the City's Purchasing Ordinance, and whether the City improperly used Mascarenas's proposal to contact Travelers directly.  Mascarenas asked for a declaratory judgment as to these matters and for "such other relief" as the Court deemed proper. [Id., p. 4.]

On October 4, 2010, Mascarenas filed a motion for partial summary judgment in the first lawsuit, seeking judgment that the City's Purchasing Ordinance applied to the ITP process at issue. [Doc. 21, Ex. 5, State Court Order and Judgment, ¶ 4.] After considering full argument and oral

argument, Judge Nash entered an order granting Mascarenas's request for partial summary judgment that the City's Purchasing Ordinance governed its ITP process. [Id., ¶ 5.]

On March 2, 2011, Mascarenas filed a motion for supplemental relief, asking that the ITP process be "declared invalid" and that the City "be enjoined to comply with its Purchasing Ordinance for Respondent's selection of authorized vendors of voluntary insurance for employees." [Doc. 21, Ex. 4, ¶ 5.] Because Mascarenas concluded the City had declined to follow the "logical consequences of the Court's grant of partial summary judgment," Mascarenas was "compelled to seek this relief." [Id., ¶ 6.] In its prayer for relief, Mascarenas explicitly requested "an injunction directing [the City] to comply with its Purchasing Ordinance," and for an order dismissing Mascarenas's other claims for declaratory judgment without prejudice, "or for such other supplemental relief as the Court deems necessary . . . ." [Id., p. 2.]

Mascarenas did not seek damages in the first lawsuit. [Doc. 23, ¶ 7.] However, there is no dispute that Mascarenas's first lawsuit requested not only declaratory relief, but also injunctive relief. Moreover, nowhere in the briefing does Mascarenas deny that it sought injunctive relief in the first lawsuit.

In addition, Mascarenas requested "remand" to the Human Resources Department so that the City could issue a "written decision in connection with [its] various determinations following the ["ITP"]. [Doc. 25, Ex. 9 Motion for Remand, p. 1.] Mascarenas also requested that the City "be directed to develop an adequate record of its decision process." [Id.]

On April 6, 2011, before the first lawsuit was resolved by Judge Nash, Mascarenas filed a second lawsuit in the Second Judicial District Court, alleging a common law breach-of-contract claim as well as a constitutional claim under 42 U.S.C. § 1983 ("second lawsuit").

At the May 10, 2011 final hearing on Mascarenas's first lawsuit in CIV 2010-04141, the City advised Judge Nash that it intended to remove the second lawsuit to a federal forum and seek dismissal based on claim preclusion. Even with that information being presented, Mascarenas did not amend its first lawsuit. True to its word, the City removed the second lawsuit, the present litigation, to federal court. [Doc. 1, attachments.]

On June 20, 2011, Judge Nash entered an Order and Judgment in the first lawsuit setting forth the procedural history, including the fact that Mascarenas had filed the second lawsuit seeking damages and that the City had already filed a Notice of Removal to federal court. [Doc. 21.] Even with the knowledge that the City was going to seek dismissal of the second lawsuit on claim preclusion grounds, Judge Nash denied Mascarenas's motion for supplemental relief but granted declaratory judgment in Mascarenas's favor based on the earlier entry of partial summary judgment that the ITP process was governed by the City's Purchasing Ordinance and was not in accordance with law. [Id., ¶ 8.] The state court found that the remaining alleged actual controversies were no longer actual controversies and dismissed the concurrent appeal as moot. [Id., ¶ 9.]

## City's Motion for Summary Judgment

The City now argues that summary judgment should be granted in its favor on grounds of claim preclusion and that the second lawsuit be dismissed, with prejudice. Mascarenas denies that all requirements of the defense of claim preclusion have been met and also raises the "declaratory judgment exception" to principles of claim preclusion. [Doc. 23, p. 4.]

## Analysis

### A.     Claim Preclusion/*Res Judicata*

The City's request for dismissal based on claim preclusion arises out of Mascarenas's two lawsuits – the first lawsuit, brought and completed in state district court, and the second lawsuit,

brought in state court before the completion of the first lawsuit, and removed to federal court. The question is whether principles of claim preclusion require this court to dismiss the second lawsuit.

The starting point for addressing this question is the "full faith and credit" statute, 28 U.S.C. § 1738, which requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the state court from which they emerged. Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). A federal court asked to determine this question must look first to preclusion principles of the state wherein the pertinent state court resides, in this case, New Mexico. *See* Marrese v. American Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380-83, *reh'g denied,* 471 U.S. 1062 (1985).

Under New Mexico law, claim preclusion requires identity of the first and second lawsuits as to four elements: (1) the parties must be the same; (2) the cause of action must be the same; (3) there must be a final decision in the first lawsuit; and (4) the first lawsuit's decision must have been on the merits. Kirby v. Guardian Life Ins. Co. of America, 2010-NMSC-14, ¶ 61, 148 N.M. 106 (2010). If a party is able to establish the existence of these requisite elements, then the doctrine of claim preclusion bars the second lawsuit. *See* Yapp v. Excel Corp., 186 F.3d 1222, 1226 (10th Cir. 1999) (applying similar principles of federal *res judicata*).

Mascarenas challenges requirements (2) and (4). [Doc. 23, 9.] It does not argue that the parties were not the same or that there was not a final decision in the first lawsuit. Thus, the Court examines only the disputed elements – whether the two lawsuits had the same cause of action (2) and whether the first lawsuit's decision was on the merits (4).

### 1. *Whether the Cause of Action was the Same*

It is true that Mascarenas did not assert claims of breach of contract or violations of § 1983 in the first lawsuit, nor was there a request for monetary damages in the first lawsuit. However, the

fact that the legal theories were not identical in the two lawsuits is not determinative as to the doctrine of claim preclusion.  *See* Hatch v. Boulder Town Council, 471 F.3d 1142, 1147 (10th Cir. 2006) (applying similar Utah law) ("Identity" of claims "does not refer to an exact identity between the legal theory of the claims brought in the first and second actions; rather, the question is whether there is an 'identity of facts and evidence between the two claims.'")

*Res judicata* bars not only claims that were raised in the prior proceeding, but also claims that could have been raised.  Id. (internal citation omitted).  *See* Santa Fe Village Venture v. City of Albuquerque, 914 F.Supp. 478, 481 (D.N.M. 1995) (finding all requirements of claim preclusion met "despite the different theories" raised.)  "Claim preclusion bars claims that were or could have been brought in an earlier proceeding."  Id. (*citing* Three Rivers Land Co. Inc. v. Maddoux, 98 N.M. 690, 695 (1982), *overruled on other grounds,* Universal Life Church v. Coxon, 105 N.M. 57 (1986), *cert. denied*, 482 U.S. (1987).  *See also* Ford v. New Mexico Dep't of Pub. Safety, 119 N.M. 405, 414 (Ct. App. 1994) ("Claim preclusion does not depend upon whether the claims arising out of the same transaction were actually asserted in the original action."), *cert. denied*, 119 N.M. 354 (1995).

Stated differently, the "same claim or cause of action" requirement is decided by the injury for which relief is demanded, rather than the legal theory upon which the plaintiff relies.  Criste v. City of Steamboat Springs, 122 F.Supp. 2d 1183, 1186 (D. Colo. 2000) (applying similar Colorado *res judicata* law).  "Thus, *res judicata* bars litigation of all issues actually decided as well as all issues that might have been decided" [in the first lawsuit].  Id.  *See also* Santa Fe Village Venture, 914 F. Supp. at 481 (Tenth Circuit "has held repeatedly that a state court judgment is preclusive as to claims which were or could have been brought") (internal citations omitted).

Thus, the Court must determine whether Mascarenas ***could have*** brought the claims for damages for breach of contract and violations of constitutional rights in the first lawsuit.  The Court

8

finds that no legal impediments precluded Mascarenas from bringing these claims in the first lawsuit, along with its requests for declaratory and injunctive relief. The state court is not a court of limited jurisdiction and could have entertained both the state law claim for breach of contract and the § 1983 claim. *See* Santa Fe Village Venture, 914 F. Supp. at 481 (New Mexico courts adjudicate § 1983 claims) (internal citation omitted).

Mascarenas does not argue that it could not have brought the claims it raised in the second lawsuit in the state court action. Instead, Mascarenas attempts to explain why it did not bring the damage claims in the first lawsuit. "Plaintiff's first action was to determine as efficiently as possible whether Defendant acted in accordance with law, and hopefully to persuade Defendant . . . to act in accordance with the law if the law had not been followed." [Doc. 23, p. 10.] While Mascarenas may have thought the first lawsuit was more efficient as pled and that a two-step process might encourage the City to change its position, this does not mean that Mascarenas was prevented from raising the other claims in the first lawsuit.

Mascarenas also explains that the second lawsuit "was undertaken only after the illegality of Defendant's ITP process was established." [Doc. 23, p. 10.] Still, Mascarenas does not argue that it could not have brought the damages claims in the first lawsuit along with its requests for declaratory and injunctive or coercive relief. Indeed, it would have made sense to bring all of its claims arising from this set of facts in one lawsuit.

In its own summary judgment briefing [Doc. 19, p. 5], Mascarenas asserts that its damages claim presented different factual issues than the primarily legal issues set out in the first lawsuit. The Court does not find this argument persuasive because nothing prevents a state district court from resolving factual issues along with legal questions. Mascarenas further explains that the damages claim was "not a convenient trial unit with the Rule 75/declaratory judgment action; and was not

9

expected by the parties to be heard in the Rule 75/declaratory judgment action."[3]  Again, the explanations that it was more convenient to separate the claims into two lawsuits or that the parties did not expect all claims to be heard together do not amount to legal barriers that prevented Mascarenas from bringing all of the theories in the first lawsuit.

Mascarenas also argues that "damage claims are not authorized in a Rule 1-075 proceeding (SCRA 1-075(T))." [Doc. 19, p. 5.] Rule 1-075(T) authorizes a state district court, in its appellate capacity to remand a case to the appropriate administrative agency for further proceedings, reverse a decision under review, or affirm the decision under review.  However, after a careful reading of SCRA 1-075(T), the Court finds no mention of damages.  Thus, it is not clear that the statutory provision precludes a request for damages based on state law claim for breach of contract.

The constitutional theories advanced under § 1983 and the state law claims of breach of contract could have been included in Mascarenas's state law complaint for declaratory and injunctive relief.  This is not a situation where the damages claims arose subsequent to a complaint for declaratory relief, where the question might be decided differently.  Here, Mascarenas was well aware of the alleged injuries to its business and related claims in at least 2009, when the City did not select Mascarenas as a vendor that could present its insurance products to City employees.

The New Mexico Supreme Court adopted the rules set forth in Restatement (Second) of Judgments §§ 24 and 25 for defining scope of a "claim" or "cause of action."  A claim that is extinguished under the Restatement includes "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transaction, out

---

[3]Mascarenas states that it filed its Motion for Supplemental Relief, "requesting the relief allowed in a Rule 75 proceeding." [Doc. 19, p. 4.] Rule 1-075 NMRA addresses "constitutional review by district court of administrative decisions and orders."

of which the action arose." Strickland v. City of Albuquerque, 130 F.3d 1408, 1411 (10th Cir. 1997) (*citing* Maddoux, 98 N.M. 690, 652 P.2d at 245).

The Court decides that for purposes of claim preclusion, the causes of action in the first and second lawsuit were the same, arose out of the same alleged conduct by the City, and were known to Mascarenas at the time it filed the first lawsuit. In other words, there was an identity of facts and evidence among the claims brought in the two lawsuits. Because Mascarenas's damages request for breach of contract and constitutional violations all arose out of the ITP process and the City's vendor decisions in 2009, Mascarenas's causes of action were the same and it could have brought the entire controversy in the first lawsuit.[4]

Moreover, policy reasons support the Court's finding that the causes of action are the same and could have been raised in the first lawsuit. The doctrine of claim preclusion is intended to promote a policy of "finality, judicial economy, preventing repetitive litigation and forum-shopping and 'the interest in bringing litigation to a end.'" Plotner v. AT&T Corp., 224 F.3d 1161, 1168 (10th Cir. 2000) (internal citation omitted). Claim preclusion serves "vital public interests," which include "fostering reliance on prior adjudications; . . . preventing inconsistent decisions; ... relieving parties of the cost and vexation of multiple lawsuits; and ... conserving judicial resources. *See* Nikols v. Chesnoff, 435 F. App'x 766, 769 (10th Cir. Jul. 28, 2011) (unpublished decision) (applying similar Utah law) (internal citations omitted). The doctrine is intended to bar the "impropriety of permitting parties to have two bites at the apple." Kenman Engineering v. City of Union, 314 F.3d 468, 478

---

[4]Mascarenas's discussion implying that its first lawsuit was solely an action for declaratory relief is not convincing. As will be discussed below, Mascarenas asked for both declaratory and injunctive relief in the first lawsuit. Thus, the declaratory relief exception to the doctrine of claim preclusion is inapplicable here (*see infra*).

11

(10th Cir. 2002) (*quoting* Lemonds v. St. Louis County, 222 F.3d 488, 495 (8th Cir. 2000), *overruled in part, on other grounds by* Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005)).

There simply was no jurisdictional or other legal obstacle to prevent Mascarenas from bringing all the claims at issue in the first lawsuit. Thus, this element of the claim preclusion test is satisfied.

### 2. *Whether the First Lawsuit's Decision was on the Merits*

Mascarenas argues that the first lawsuit's decision was not on the merits. Judge Nash's final Order and Judgment, entered June 20, 2011, determined that the ITP process was governed by the City's Purchasing Ordinance and was not in accordance with law. [Doc. 23, p. 10.] However, the state district judge found that Mascarenas's other requests or arguments were "no longer actual controversies." [Doc. 21, Ex. 5, ¶ 9.] Judge Nash then ruled that Mascarenas's "concurrent appeal is dismissed as moot." [Id., ¶ 10.]

Mascarenas asserts that this ruling indicates that even if there were other claims or contract claims considered in the first lawsuit, "any decision on that claim was not decided on the merits." [Doc. 23, p. 10.] In support of its argument, Mascarenas relies on Wiznia v. City of Albuquerque, 135 F. App'x 181 (10th Cir. 2005). The facts in Wiznia are distinguishable. There, the Tenth Circuit observed that the state district court's order of dismissal was one-page long and simply stated it was granting the motion to dismiss. Id. at 188 n. 2. A review of the motion to dismiss convinced the Court that the dismissal was based on the ground of mootness. Id.

Wiznia makes clear that if a dismissal is based only on grounds of mootness, the Court lacked jurisdiction over the matter, and the dismissal did not operate as a ruling on the merits of the action. Id. at 187. However, in Mascarenas's first lawsuit, the state court granted a partial summary judgment in favor of Mascarenas after full briefing and oral argument. The state court agreed with

12

Mascarenas that the ITP process was governed by the City's Purchasing Ordinance. Judge Nash then entertained briefing and a hearing as to Mascarenas's request for supplemental relief, along with its request for injunctive relief against the City. The state court issued two pages of findings and dismissed Mascarenas's additional requests for relief as moot. In other words, the state court did not find all of Mascarenas's requests to be moot and instead, found in favor of Mascarenas on part of its request.

This is similar to what occurred in Hatch, 471 F.3d at 1148, where the plaintiff contended the prior state proceeding did not result in a final judgment on the merits of their claims. The Utah Court of Appeals in Hatch, similar to the state court here, ruled in plaintiff's favor on the invalidity of the city's zoning ordinance and then determined that the ordinance's invalidity "renders moot [plaintiffs'] other claims." In Hatch, as is true here, the defendants argued that there was judgment on the merits as to the invalidity of the zoning ordinance claim, even if other claims were declared moot. The plaintiffs asserted in that case that because the court did not adjudicate their *other* claims on the merits and merely found them moot, the judgment could not have had a preclusive effect on the claims the court found moot, or any other claims they might have raised. Id.

The Tenth Circuit rejected the plaintiffs' argument in Hatch, finding that the state court did not resolve their claims entirely on mootness grounds. "A final judgment that found some claims moot . . . and resolved at least one of them on the merits" satisfied the requirement of a final judgment. Id.

While Hatch applied Utah state law rather than New Mexico law, the Court finds the procedural history similar and the reasoning persuasive. Here, the state court entered a judgment on at least one of Mascarenas's claims on the merits, while finding others moot. This is sufficient

13

to satisfy the requirement of a final judgment. Therefore, the Court concludes that this element of the claim preclusion test is also satisfied.

### 3. *Whether Plaintiff Had a "Full and Fair Opportunity" to Litigate All Issues*

In articulating the requirements for claim preclusion, New Mexico courts have also stated that the parties in a lawsuit must have had a "full and fair opportunity to litigate all issues arising out of th[e] claim." Wiznia, 135 F. App'x at 185 (*citing* Myers v. Olson, 100 N.M. 745, 676 P.3d 822, 824 (1984)). Indeed, Mascarenas argues that "under New Mexico law, the key issue is whether the party against whom issue preclusion[5] is sought has had a full and fair opportunity to litigate the issue in the prior action." [Doc. 19, p. 5.]

Although Mascarenas did not raise claims for damages, breach of contract and constitutional violations, Plaintiff made no showing that he was legally precluded from bringing all of these claims in the first lawsuit. Mascarenas's speculation that it was better to bring two separate actions does not support its argument that he lacked a full and fair opportunity to litigate all of the issues in the first lawsuit. *See, e.g.,* Crocog Co. v. Reeves, 992 F.2d 267, 270 (10th Cir. 1993) (the "plaintiff cannot claim he lacked a full and fair opportunity to litigate a legal theory based on speculation on what might have happened if he had raised it in the prior proceeding").

The Court concludes that Mascarenas had a choice of pursuing all of its claims in state court in one lawsuit and that it failed to show it lacked a full and fair opportunity to litigate its legal

---

[5]Mascarenas discusses this argument in terms of issue preclusion rather than claim preclusion. Notwithstanding that characterization, it appears that New Mexico courts, at times, review whether a party had a full and fair opportunity to litigate all of the claims with respect to a defense of claim preclusion. *But see* Nikols v. Chesnoff, 435 F. App'x 766, 769 (10th Cir. Jul. 28, 2011) (unpublished decision) (noting that under Utah law, the "full and fair opportunity to litigate a claim in the first lawsuit" is ordinarily an element only for issue preclusion.

theories, all of which existed at the time Mascarenas filed the first lawsuit. Therefore, the Court rejects this argument.

### B.   Declaratory Judgment Exception to Claim Preclusion

Even if the elements of claim preclusion are satisfied, there are exceptions to the doctrine. For example, should a litigant bring only a declaratory relief action, that party may sometimes bring additional coercive litigation based on the same claim. James Wm. Moore, in Moore's Federal Practice § 131.24[3] (3d ed. 2008), noted that public policy goals are "furthered when a plaintiff who has sought solely declarative relief is allowed to seek additional coercive relief based on the same claim." The Restatement (Second) of Judgments § 33 (1982) is consistent with this view.

> A valid and final judgment in an action brought to declare rights or other legal relations of the parties is conclusive in a subsequent action between them ***as to the matters declared*** . . . .

(emphasis added). Commentary to § 33 of the Restatement further explains that:

> When a plaintiff seeks ***solely*** declaratory relief, the weight of authority does not view him as seeking to enforce a claim against the defendant. Instead, he is seen as merely requesting a judicial declaration as to the existence and nature of a relation between himself and the defendant. The effect of such a declaration, under this approach, is not to merge a claim in the judgment or to bar it. Accordingly, regardless of outcome, the plaintiff or defendant may pursue further declaratory or coercive relief in a subsequent action.

(emphasis added).

Mascarenas argues that New Mexico law is clear that where damages are not sought in a declaratory judgment action (first lawsuit), damages may be pursued in separate litigation (second lawsuit). [Doc. 23, p. 4.] In support of its position, Mascarenas cites a number of cases, including New Mexico case law recognizing the declaratory judgment exception to *res judicata*. Mascarenas

15

also relies on the same portions of the Second Restatement of Judgments set out above. [Id. at pp. 4-7.]

Repeatedly in the briefing, Mascarenas tries to fit its first lawsuit into this exception by summarizing it as only a request for judicial review of the City's ITP decisions or a claim for declaratory judgment that the City's decision process violated applicable law. [Doc. 23, p. 7.] "The claims in the first proceeding were for judicial review under Rule 1-075 of the Defendant's ITP decisions, and for declaratory judgment that the ITP process violated applicable law." [Doc. 19, p. 6.]

However, the undisputed facts and procedural history demonstrate that Mascarenas's first lawsuit was not merely a request for judicial review or only a complaint for declaratory relief. In addition to those requests, Mascarenas unequivocally asked for coercive relief in the form of an injunction, as well as other relief. While the City raises this issue in its briefing, Mascarenas never supplies a response to demonstrate that the first lawsuit *solely* sought declaratory relief.

The case of Criste v. City of Steamboat Springs is instructive on the declaratory judgment exception to the claim preclusion doctrine. In that case, the plaintiff requested and obtained an injunction against the city. Criste, 122 F.Supp. 2d at 1187. "[T]he great weight of authority holds that where a party seeks declaratory as well as coercive relief, the declaratory judgment exception to res judicata does not apply." Id. (collecting cases). Put differently, "[s]o long as a request for declaratory relief is combined or followed with coercive relief, the claim preclusion rules that apply to actions for coercive relief apply with full force." Id. (*quoting* 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 4446, at 401 (1981)). The Court in Criste proceeded by stating:

> As noted above, the overwhelming majority of courts to consider this issue have held that where a party seeks coercive as well as declaratory relief, normal claim preclusion rules apply. Indeed, the Court is aware of no authority to the contrary. Most cases discussing the general declaratory judgment cite § 33 of the Second Restatement of Judgments.

Id. at 1189. The Second Restatement of Judgments could not clearer – a plaintiff must seek ***solely*** declaratory relief, in order avoid the restrictions of claim preclusion. Restatement (Second) of Judgments § 33 cmt. c (1980).

The Court in Criste also provided the policy reasons justifying a limited application of the declaratory judgment exception.

> [T]o allow the exception to extend beyond purely declaratory relief would run counter to the purpose of declaratory actions, which is "to provide a remedy that is simpler and less harsh than coercive relief." Perhaps more importantly, to permit some but not other coercive actions to accompany a request for declaratory relief would open the door to uncertainty and potential claim splitting. The Court sees no justification . . . for applying ordinary claim preclusion rules to cases where the plaintiff seeks declaratory and damage relief, but a different set of rules to cases where the plaintiff seeks declaratory and injunctive relief. Moreover, if courts were to apply a more lenient set of rules to the latter situation, this would encourage parties to split their causes of action to gain a second bite at the apple if not successful in the first lawsuit. To avoid uncertainty, application of preclusion rules must be clear.

Id. at 1189 (internal citation omitted).

Although the plaintiff in Criste sought and obtained declaratory and injunctive relief, unlike Mascarenas who did not obtain the injunctive relief it sought, the limited application of the exception applies. "Federal courts have consistently held that the declaratory judgment exception applies only if the prior action solely sought declaratory relief. 'By asking for coercive relief (the injunction) in the first suit, the plaintiff lost the right to invoke the declaratory judgment exception.'" Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 164 (4th Cir. 2008) (internal citation omitted).

*See also* Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co., 600 F.3d 190, 196 (2d Cir. 2010) ("the declaratory judgment exception to the application of the doctrine of *res judicata* applies when the prior action involved *only* a request for declaratory relief") (emphasis in original).

Under the factual and procedural history of this litigation, the Court concludes that the declaratory judgment exception to claim preclusion does not apply. This is true because it is undisputed that Mascarenas's first lawsuit requested injunctive relief along with declaratory relief, as well as other relief.

### C.  **Alleged Waiver of *Res Judicata* Defense by City**

Mascarenas argues that the City acquiesced in Mascarenas's second lawsuit and waived its *res judicata* arguments by removing this lawsuit to federal court. [Doc. 19, p. 8.] Mascarenas relies on Wiznia, 135 F. App'x 181, in support of this argument.

The Court determines that Wiznia is distinguishable as to the issue of a possible waiver. In Wiznia, the Tenth Circuit concluded that the City acquiesced in the splitting of the plaintiff's claims. This was because the City removed the civil action to federal district court and subsequently filed an answer but made no objection therein that the plaintiff was splitting his claims. Wiznia, 135 F. App'x at 186. The Court observed that there was no indication that the City objected in the administrative appeal to the plaintiff maintaining two actions on parts of the same claim. In that case, only after the stated district court dismissed the administrative appeal, did the City seek to amend or supplement its answer to plead the defense of *res judicata.* Id.

The facts in this are easily distinguishable from those in Wiznia. Even before the City removed Mascarenas's second lawsuit to federal court, counsel for the City appeared at a hearing before Judge Nash and explained that Mascarenas had filed a second lawsuit which the City would remove with the intention to raise the defense of claim preclusion. [Doc. 25, p. 3.] The City actually

warned Mascarenas in open court during proceedings in the first lawsuit that it would assert preclusive defenses. Nothing prevented Mascarenas from moving to consolidate the cases or to amend in the nine days before the City removed the second lawsuit. [Id.] The state court's final order documents the City's notice of removal as to the second lawsuit. The City's answer to the second lawsuit, unlike the defendant's answer in Wiznia, included a defense of claim preclusion. [Doc. 3.]

Under these circumstances, the Court finds the City neither acquiesced in Mascarenas's second lawsuit nor waived its claim preclusion defense by removal to federal court.

## Conclusion

For all of the above-stated reasons, the Court determines that there are no genuine issues of material fact with respect to a finding that the doctrine of claim preclusion bars Mascarenas's second lawsuit and that it should be dismissed, with prejudice. Because of this determination, the Court also concludes that Mascarenas's Motion for Partial Summary Judgment as Liability is denied as moot. In addition, based on this ruling, the Court finds that it need not reach Mascarenas's additional arguments as to its property interests, the § 1983 claim, or reliance damages.

IT IS THEREFORE ORDERED that:

(1) Defendant City of Albuquerque's Motion for Summary Judgment [Doc. 21] is GRANTED based on grounds of claim preclusion, with the result that Plaintiff's Complaint and this matter is dismissed, in its entirety, with prejudice;

(2) Plaintiff Mascarenas Enterprises, Inc.'s Motion for Partial Summary Judgment [Doc. 16] is DENIED as moot.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge